JACOB JACOBSON v. HOBART IRON COMPANY.[1]

February 14, 1908.

Nos. 15,431—(198).

**Assumption of Risk—Charge to Jury.**

This is a personal injury action, in which it is *held* that the questions whether the defendant was guilty of negligence and whether the plaintiff assumed the risk were, under the evidence, questions of fact; that there were no reversible errors in the rulings of the trial court as to the admission of evidence; and that it did not err in instructing the jury, or in refusing the defendant's requests for instructions.

[1] Reported in 114 N. W. 951.

Action in the district court for St. Louis county to recover $40,350 damages for personal injuries. The case was tried before Dibell, J., and a jury which found for plaintiff in the sum of $17,000. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*E. C. Kennedy* and *Washburn, Bailey & Mitchell,* for appellant.
*John R. Heino* and *Theo. Hollister,* for respondent.

START, C. J.

On May 21, 1906, the plaintiff was injured while at work in the underground iron mine of the defendant, and he brought this action to recover damages for his injuries, on the ground of the defendant's negligence. He recovered a verdict for $17,000, and the defendant appealed from an order of the district court of the county of St. Louis denying its motion for judgment notwithstanding the verdict or for a new trial.

The complaint alleged several specific acts of negligence on the part of the defendant—among others, that the plaintiff and another miner, known as his partner, were directed by the defendant's shift boss, in charge of the underground operations of the mine, to cut a cross-drift leading from the main drift, and that the defendant was negligent in not constructing, or permitting the construction of, an open set, consisting of two upright posts and an overreaching cap inside of the timbers of the main drift, at the point where the work of blasting for the cross-drift was to be commenced, so as to furnish greater security and to prevent the falling of the roof over the main drift by reason of the blasting, and, further, that the defendant was negligent in putting the plaintiff at work on the cross-drift without providing any rules as to the time when and the place where blasting was to be done, and without providing for giving warning to him when a blast was about to be set off by other miners in the vicinity where he was required to work. Only the last claim of negligence was submitted to the jury.

1. The defendant's first contention is that it was entitled to judgment in its favor notwithstanding the verdict because no negligence on its part was shown, and, further, that it was conclusively shown

by the evidence that the plaintiff assumed the risk of the danger from which he was injured.

There was evidence tending to show that the plaintiff was thirty four years old, and had worked as a miner some ten months prior to his injury, but less than a week in the defendant's mine; that the work in the mine was attended with danger, and was of a character and magnitude requiring supervision by the defendant, and the adoption of rules or regulations in setting off blasts which might endanger the safety of other miners engaged in the vicinity, so that they might be warned·when·a blast was about to be set off; that the defendant neglected to discharge this duty; that the plaintiff and his partner let off a blast at the point where they were working, which knocked out a post in the main drift and the cross-cap resting thereon, and the lagging or covering resting on the cap fell down, and with them the ore resting on them, and several tons of ore were also jarred loose by the blast; that while the plaintiff and his partner, by direction of the shift boss, were at work in the usual and proper way, restoring the timbers, in order to make the place safe, two other miners, designated in the record as the "Austrians," who were working at a point some two hundred feet away, set off a heavy blast, without any warning to the plaintiff and his partner, which caused the body of ore over the point where the timbers which the plaintiff and his partner were trying to replace had fallen out, to fall upon the plaintiff, whereby his back was broken.

The evidence is voluminous and somewhat complicated, and we do not discuss or analyze it, as it would serve no useful purpose. A careful consideration, however, of the record, leads us to the conclusion that there was evidence fairly tending to establish the ultimate facts we have indicated, and that the evidence was sufficient to justify the trial court in submitting the question of the defendant's negligence to the jury and to sustain their finding to the effect that the defendant was negligent. Carlson v. N. W. Telephone Exch. Co., 63 Minn. 428, 65 N. W. 914; Borgerson v. Cook Stone Co., 91 Minn. 91, 97 N. W. 734; Hjelm v. Western Granite Contracting Co., 94 Minn. 169, 102 N. W. 384; Carlson v. Haglin, 95 Minn. 347, 104 N. W. 297.

The defendant claims that it was entitled to an instructed verdict for the further reason that the plaintiff knew and appreciated the risks incident to the work that he was doing.

It is true, as defendant's counsel suggests, that the plaintiff was engaged in making a known dangerous place safe; but he did not assume the risk of the defendant's negligence. The jury were expressly instructed that, if the ore which fell and injured the plaintiff fell because it was left in a loosened condition by the blasting done by the plaintiff and his partner, the plaintiff could not recover; and, further, the jury were, in effect, instructed that the plaintiff could not recover in any event, unless the cause of the falling of the ore and of the plaintiff's injury was a blast set off by the "Austrians" without warning to him. The verdict, then, establishes the fact that the plaintiff was not injured by reason of any act of his own, or risk necessarily incident to the work he was doing, but by reason of a blast set off by the "Austrians" without warning to him. Whether he knew and also appreciated the risk to which he might be subjected by the firing of blasts in another part of the mine without warning to him, and therefore assumed the risk, was clearly made by the evidence a question of fact, which was properly submitted to the jury. It is suggested that the plaintiff and the "Austrians" were fellow servants, and that he assumed the risk of their letting off a heavy blast without warning him. If it was the duty of the defendant, as the jury necessarily found under the charge of the court, to provide for warning the plaintiff, such duty could not be delegated; and if there was negligence in this respect, no matter who committed it, the plaintiff did not assume the risk. Atlas v. National Biscuit Co., 100 Minn. 30, 110 N. W. 250. It follows that the defendant was not entitled to a directed verdict.

2. The defendant further claims that it is entitled to a new trial on the ground that a large amount of immaterial evidence was received on the trial over its objections and exceptions.

It is true that the plaintiff, in an attempt to prove that the defendant was guilty of negligence in not putting in an open set inside the main drift at the point where the plaintiff was set at work to cut the cross-drift—that is, the first ground of alleged negligence herein re-

ferred to—put in a large amount of evidence, which occupied the attention of court and counsel some two days. The defendant objected to the evidence as incompetent, irrelevant, immaterial, and not within the issues. No objection was made that the allegations of the complaint were not sufficient to constitute a cause of action on this ground. When the evidence on this branch of the case was all in, the trial court was of the opinion that it was not sufficient to justify a claim to recover on this alleged ground of negligence, because it had not shown that this alleged negligence was the cause of the plaintiff's injury. The trial court, therefore, submitted to the jury only the second alleged ground of negligence, the failure of the defendant to supervise the blasting and to warn the plaintiff., It follows, as the result showed, that all of the evidence was immaterial; but it does not follow from this that the trial court erred in receiving it at the time it was offered. There is nothing in the record to indicate that the testimony was not offered in good faith, and when it was received it was apparently relevant to one of the issues; for the complaint alleged this particular act of negligence, and the allegation was put in issue by the answer. It is true that a careful scrutiny of the complaint discloses the fact that it contains no direct allegations that the alleged negligence with respect to the open set was the cause of the plaintiff's injury; but this was not called to the attention of the trial court when the objections were made and the evidence received.

We have, then, a case where only material evidence was received on the only issue submitted to the jury; but in the course of the trial evidence was received which was only apparently relevant to another issue which was not submitted to the jury, as to which the court charged the jury as follows: "There is a very considerable dispute between the plaintiff and the defendant as to whether an opening set should have been put in at the cross-cut at the time. * * * This question is not the controlling question in the case at all, and, in fact, is of no very special importance. It presents more or less of a false issue, and you should not be misled by it. The fact is that when a blast was set off the center post was blown down, and its cap naturally sank with it. But no one was hurt, the plaintiff and his

partner went away, and, if nothing more had occurred, this action, of course, would not have been brought. It was proper enough to refer to the cross-cut to give you an understanding of the surroundings; but no one was hurt because an opening set of a particular kind, or any kind, was not made, and the plaintiff does not now claim to recover because no opening set of the kind which he says is the right kind was put up. He does not claim to recover upon that ground." We are therefore of the opinion that no reversible error was committed in receiving the evidence complained of.

3. We have considered the parts of the charge of the court and the requests for instructions refused which are assigned as error. The charge as a whole was a fair and correct presentation of the case to the jury, and the requested instructions were properly refused. This is reasonably clear when the requested instructions are tested by the evidence and the general charge of the court.

Order affirmed.

JAGGARD, J. (dissenting).

On the one hand, customary care is not always legal care; on the other hand, customary care is evidence of and may amount to legal care. Necessarily the effect of proof of the exercise of customary care depends largely upon the extent of the observance of the custom; the subject-matter to which it applies; and the reasonableness of suggested substitutes. Under the circumstances here involved, it seems to me that defendant was not negligent in following the practice of allowing the miners to warn each other which was shown to have been universal and that plaintiff assumed the risk of the negligent failure of the workmen engaged in the same employment to give him the usual warning.