THOMAS GRISTOCK v. THE ROYAL INSURANCE COMPANY.

*Fire insurance—Proofs of loss—Waiver—Incumbrances—Notice to agent—Authority of adjuster—Evidence.*

1. An insurance adjuster and the agent of the assured spent several days investigating the loss, during which time a list of the personal property destroyed was made, signed, and sworn to by the agent, and an agreement arrived at as to the value of all of the buildings except the dwelling-house, which question was agreed to be submitted to arbitrators, with whom the adjuster and agent were to meet in five days, and close the matter up; but before the time arrived for such meeting the

84 MICH.—11.

adjuster wrote that he could not meet at the time appointed, and the agent, relying upon this, did not make out the formal proofs of loss as required by the policy. Shortly after the expiration of time limited in the policy for making such proofs, the adjuster inquired of the agent if they had been sent to the company, and was informed that the agent supposed that the proofs had been already made out except as to the house, and as to that he had been waiting on the motion of the adjuster. Soon after this interview the agent informed the company by letter of what had occurred between him and the adjuster, and asked for a speedy adjustment of the loss, and was notified by the general agents of the company that the adjuster denied the statements contained in the agent's letter, and that they were advised by their counsel that the policy was null and void. In a suit to recover the insurance, in which the foregoing facts were testified to by plaintiff's witnesses, the court instructed the jury that if the conduct and acts and conversation of the adjuster would induce an honest belief on the part of the agent that the proofs that were being made, and certificates (of value) that were being furnished, and the negotiations that were being had, were all that were required by the company, and that the agent acted with an honest belief of such fact, which he was warranted from the facts in entertaining, as a reasonable man, the jury would be justified in finding a waiver by the company of formal proofs of loss; which charge is held to be sustained by the authorities; citing *Insurance Co. v. Fay*, 22 Mich. 467; *Insurance Co. v. O'Connor*, 29 Id. 241; *Insurance Co. v. Kranich*, 36 Id. 289; *O'Brien v. Insurance Co.*, 52 Id. 131.

2. An applicant for insurance informed an agent authorized to issue policies, on making an *oral* application for insurance, that there were certain mortgages on the property, and was informed by the agent that it was all right. The policy was issued, and in reporting to the company the agent stated that the property was not mortgaged. The policy provided that, if the property was or should be mortgaged *without written* notice by the assured to and the written consent of the company indorsed on his policy, it should be void. It also provided that agents had no authority to bind the company except strictly in accordance with the terms, conditions, limitations, requirements, and the actual issue of the policy, and that their acts, statements, or knowledge should not be held or claimed to have waived any of the conditions or stipulations of the policy, unless waiver was indorsed thereon in writing, signed by such agent. In a suit to recover the insurance the court

instructed the jury that if they should find that, prior to the issuance of the policy, explicit, definite notice of the character and amount of the mortgages was given to the agent, so that with full knowledge of such incumbrances he issued and delivered the policy, and then failed to notify the company of the fact, the plaintiff would not be precluded from recovery, as the jury might treat the knowledge of the agent that of the company; which instruction is held to have been correct, within the former decisions of the Court; citing *O'Brien v. Insurance Co.*, 52 Mich. 131; *Copeland v. Insurance Co.*, 77 Id. 554; *Russell v. Insurance Co.*, 80 Id. 407.

3. The negotiations and agreement for arbitration set forth in head-note 1 were within the general authority of an insurance adjuster, and, in the absence of notice to the assured of a more limited authority, he had a right to rely upon such general authority, and act accordingly.

4. Two sworn statements were made out by the agent of the assured, one of the personal property lost by the assured, and the other of that of the agent, both of which were introduced in evidence in a suit by the assured upon his policy. The agent testified on cross-examination that some of the articles listed in the statement of his loss belonged to the assured, and on redirect examination he testified that he never intended to state that he owned said articles. And it is held that the witness was entitled to testify to the mistake, and, as in so doing he would indirectly testify to his intention in making the list, no error was committed in refusing to strike out the testimony.

Error to Clinton. (Edget, J., presiding.) Argued November 21, 1890. Decided December 24, 1890.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*Norris & Norris,* for appellant.

*Spaulding & Walbridge* and *Griswold & High,* for plaintiff.

GRANT, J. The plaintiff's buildings, consisting of one two-story frame dwelling-house and two barns, and the hay, grain, and farming implements therein, were insured with the defendant. They were destroyed by fire October

17, 1888. The policy required proofs of loss to be submitted within 30 days after the loss occurred. No such proofs were made. Plaintiff commenced suit August 20, 1889. The case was regularly brought to trial, and plaintiff recovered verdict and judgment.

1. Plaintiff admits a failure to submit proofs of loss, but claims that they were waived. One Faxon was the local agent of the company in securing the policy. Immediately after the fire, Faxon notified the defendant of the loss. Defendant immediately sent its adjuster to investigate the loss. It was conceded by the defendant's counsel that the adjuster of an insurance company is clothed with the power of examining into the facts of the loss, and ascertaining the amount of it by the choice of arbitrators, or by compromise or agreement, and reporting to the company the result of his investigations. This adjuster met Thomas J. Gristock, who resided upon the farm at the time of the fire, and was the son and agent of the plaintiff. They spent several days investigating the loss, during which time a list of the personal property was made, signed, and sworn to by the plaintiff's son. A builder was employed to make an estimate of the value of the buildings. An agreement was reached as to the value of all except the house. Mr. Gristock and the adjuster agreed to refer the value of the house to arbitration. Each was to select one arbitrator, and, if they failed to agree, the two to choose a third, whose decision they agreed to abide by. They agreed to meet with the arbitrators five days after, and close the matter up. Before the time had arrived, the adjuster wrote Mr. Faxon that he could not meet with Mr. Gristock at the time appointed. Mr. Gristock, relying upon this, did not make out the formal proofs of loss as provided by the policy. Four days before the time to make such proofs had expired, Mr. Gristock consulted his attorney, who

advised him that no other proofs of loss were necessary. Shortly after the 30 days had expired, Mr. Gristock saw the adjuster, who asked him if he had sent in proofs of loss, to which Mr. Gristock replied that he supposed the proofs had already been made out, with the exception of the house, and that he had been waiting on his motion for that ever since he went away. On December 4, 1888, Mr. Gristock wrote the defendant informing it of what had occurred between himself and the adjuster, and asking for a speedy adjustment. Defendant's general agents in Chicago replied, under date of December 12, in which, after stating that the adjuster denied his statements contained in the letter, they say that they are advised by their counsel that the policy is null and void. Such, in brief, is the testimony on the part of the plaintiff. The defendant introduced no testimony.

The circuit judge, after stating, in substance, the above facts to the jury, instructed them that if the conduct and acts and conversation of the adjuster would induce an honest belief on the part of Mr. Gristock that the proofs that were being made, and the certificates that were being furnished, and the negotiations that were being had, were all that were required by the company, and that Mr. Gristock acted with an honest belief that these were all the company required, and that he was warranted from the facts in entertaining that belief in good faith, as a reasonable man, then the jury would be justified in finding that the formal proofs of loss were waived on the part of the company. He further charged them that, after the receipt of the letter of December 12, the plaintiff was not required to submit proofs of losses. The charge is sustained by the authorities. *Security Ins. Co. v. Fay*, 22 Mich. 467; *Hibernia Ins. Co. v. O'Connor*, 29 Id. 241; *O'Brien v. Insurance Co.*, 52 Id. 131; *Aurora, etc., Ins. Co. v. Kranich*, 36 Id. 289.

2. The testimony on the part of the plaintiff showed that defendant's agent, Faxon, was informed by plaintiff before the policy was issued of the existence of certain mortgages upon the property, and that Faxon told him that it was all right. Plaintiff made no written application for this policy. Faxon made a daily report to defendant, in which he stated that there was no mortgage upon the property. Plaintiff's son also testified to informing Faxon of these mortgages. Faxon, who was a witness for the plaintiff, on cross-examination, denied these statements. The judge instructed the jury that if they found that, prior to the issue of the policy, explicit and definite notice of the existence of said mortgages was given to the local agent, the plaintiff would not be precluded from recovery, and that in such case they might treat the knowledge of the agent as the knowledge of the company.[1] The charge was correct, within the former decisions of this Court. *O'Brien v. Insurance Co.,* 52 Mich. 131; *Copeland v. Insurance Co.,* 77 Id. 554; *Russell v. Insurance Co.,* 80 Id. 407.

3. In the letter of December 12, above referred to, written by the defendant's agents to plaintiff's agent, referring to the adjuster, is the following language:

"He was sent to your town, and instructed to look into the circumstances, and advise the company in regard to the same, that the company's proper officer might decide what further to do in that regard."

It is claimed by defendant's counsel that this was evidence of the limited authority of the adjuster, and that therefore the negotiations and agreement which were testified to on the part of the plaintiff were without the authority of the adjuster. The obvious reply to this claim is that they were within the general authority of an adjuster, as conceded by defendant's counsel. In the

---

[1]The facts are more fully stated in head-note 2.

absence of notice to plaintiff of this limited authority, he had a right to rely upon the general authority possessed by such agents, and to act accordingly.

4. Mr. Faxon testified that he introduced the adjuster to Mr. Gristock; that he heard some of their conversation, but could not state it any further than that they were taking an invoice or inventory of the property saved, and narrating the things that were lost; that they were together two or three days; and that he was in and out several times. Defendant's counsel moved to strike the testimony out as immaterial, and not tending to show a waiver, which the court refused. We see no error in this. It was a part of the history of the transaction. It was competent for the plaintiff to show the circumstances under which the adjuster came, and the length of time spent in the negotiations.

5. The witness Thomas J. Gristock lost by the fire certain personal property covered by a policy of his own. He had made out two sworn statements, one covering his father's loss of personalty, the other his own. These were introduced in evidence. He testified on cross-examination that some of the articles in the statement of his own loss belonged to his father. It therefore became a material question to whom these articles belonged. On redirect examination, the witness was asked: "As a matter of fact, did you ever state, or intend to state, that you owned this personal property?" The witness answered, "No." Counsel objected to the witness testifying to his intention, and moved to strike it out. The court refused, and defendant excepted. The court based its ruling upon the fact that the good faith of the execution of the papers was raised, and therefore the witness could swear to his intent. The witness was entitled to testify that this was a mistake, and in so doing he would indirectly have

testified to his intention.    We think no error was committed by the court in refusing to strike out the evidence.

Judgment affirmed, with costs.

The other Justices concurred.