W. L. HANSON AND ANOTHER, *d. b. a.* NORTHWEST
KINGHAM TRAILER DISTRIBUTORS, v. HOMELAND
INSURANCE COMPANY OF AMERICA.[1]

January 12, 1951.

No. 35,268.

[1]Reported in 45 N. W. (2d) 637.

*Robins, Davis & Lyons* and *Sidney S. Feinberg,* for appellant.
*Max Shapiro,* for respondents.

MATSON, JUSTICE.

Appeal from an order denying defendant's motion for a new trial in an action wherein a verdict was directed for plaintiffs.

In 1947 defendant issued to plaintiffs, who operate a commercial trailer sales business in Minneapolis, a policy insuring plaintiffs against loss by theft of any vehicles owned by the insured and held for sale. Plaintiffs stored and displayed the trailers in an open lot. Plaintiffs, alleging ownership of a secondhand Fruehauf trailer, brought this action on the policy to recover a $1,250 loss resulting from the theft of said trailer. Defendant denied liability on the ground that plaintiffs did not own the vehicle. At the close of plaintiffs' case defendant rested without introducing any evidence. Plaintiffs' motion for a directed verdict was then granted. Defendant now appeals from an order denying a new trial.

Was it error to direct a verdict for plaintiffs? In other words, *in the light of the evidence as a whole,* was there an issue of fact as to the ownership of the stolen trailer which ought to have been submitted to the jury?

It is elementary that a motion for a directed verdict, which by its very nature accepts the view of the *entire* evidence most favorable to the adverse party[2] and admits the credibility (except in extreme cases[3]) of the evidence in his favor and all reasonable

[2]Reiton v. St. Paul City Ry. Co. 206 Minn. 216, 288 N. W. 155; LeVasseur v. Minneapolis St. Ry. Co. 221 Minn. 205, 21 N. W. (2d) 522.

[3]An extreme case would be one where the testimony of a witness is absolutely impossible either physically or morally; or where the evidence presented by a party is so unreasonable and inconsistent and so opposed by undisputed and independent evidence as to be wholly incredible and unworthy of belief. See, Brulla v. Cassady, 206 Minn. 398, 404, 410, 289 N. W. 404, 407, 410; Thompson v. Pioneer-Press Co. 37 Minn. 285, 33 N. W. 856, and dissent therein of Mr. Justice Mitchell at 37 Minn. 295, 33 N. W. 862; Kingsley v. Alden, 193 Minn. 503, 259 N. W. 7.

inferences to be drawn therefrom, should be granted only in those unequivocal cases where (1) *in the light of the evidence as a whole,* it would clearly be the duty of the trial court to set aside a contrary verdict as being manifestly against the *entire* evidence, or where (2) it would be contrary to the law applicable to the case. Brulla v. Cassady, 206 Minn. 398, 289 N. W. 404. The application of this rule gives rise to much misunderstanding when the significance of the phrase "in the light of the evidence *as a whole*" is overlooked. The propriety of the court's action is not to be tested by a scrutiny and a consideration of only that part of the evidence which is favorable to a contrary verdict. In other words, if the evidence *as a whole* so overwhelmingly preponderates in favor of a party as to leave no doubt as to the factual truth, he is entitled to a directed verdict as a matter of law, even though there is some evidence *which, if standing alone,* would justify a verdict to the contrary. Not every conflict in evidence gives birth to a jury question. Brulla v. Cassady, *supra;* Kundiger v. Prudential Ins. Co. 219 Minn. 25, 17 N. W. (2d) 49; Applequist v. Oliver I. Min. Co. 209 Minn. 230, 296 N. W. 13; 6 Dunnell, Dig. & Supp. § 9764.

In the light of the above rule, we turn to the facts. About October 14, 1947, plaintiffs sold a new trailer—for future delivery—to Oskey Brothers and accepted from such purchasers, as a trade-in on the sale, the Fruehauf trailer (hereinafter referred to as the trailer) involved herein. In the latter part of October, the purchasers delivered the trailer to plaintiffs' storage lot, where it at all times was in plaintiffs' possession until it was stolen on November 10, 1947. In addition to establishing possession, the following uncontradicted evidence was presented in support of plaintiffs' case:

(1) Order blank, orders, acknowledgment of order, invoices showing sale of new trailer by plaintiffs to Oskey Brothers, and trade-in by Oskey Brothers of the trailer in question to plaintiffs.

(2) Bill of sale, dated October 31, 1947, signed by Oskey Brothers, by secretary, to plaintiffs.

(3) Testimony by one of the officers of Oskey Brothers that the bill of sale was authorized to be signed by the secretary and that they had no interest in the trailer at the time of the loss.

(4) Letter dated November 8, 1947, written by plaintiffs to Oskey Brothers confirming the transaction and reciting that, although Oskey Brothers were entitled to a trade-in credit of $1,250 for the trailer, they had no further interest in the vehicle. This letter bore the O. K. of a member of the Oskey Brothers firm.

· There was some testimony that prior to November 8, 1947, at the time when Oskey Brothers traded in their used trailer on new equipment, they were not satisfied with the amount of the trade-in allowance granted by plaintiffs and insisted upon some interest in the proceeds of the trailer in the event it was sold for over and above the sum of $1,250. This did not affect plaintiffs' title or right to possession of the trailer, but merely was a claim by Oskey Brothers of some interest in the proceeds in the event of a sale thereof. There was further testimony that this matter was adjusted by the letter of November 8, 1947. It was further testified that it was customary to deliver the used equipment, pending delivery of the new equipment, without making a transfer to plaintiffs of the motor vehicle registration card in order to permit plaintiffs to make a direct transfer from the original owner to any subsequent purchaser.

The loss occurred just two days after the letter of November 8, which had confirmed the passage of title from Oskey Brothers to plaintiffs and which was introduced into evidence upon cross-examination by defendant and is therefore binding upon it. Immediately the loss was reported to plaintiffs' insurance agent, Mr. Walter H. Schultz, who came to plaintiffs' place of business and who, after receiving a full statement of the facts, dictated a letter purporting to be a proof of claim containing the statement that "This trailer was left with us on consignment for sale and is owned by Oskey Brothers * * *." Defendant relies primarily upon this letter as support for its contention that the court erred in

directing a verdict. Defendant asserts that it contains an admission[4] in contradiction of plaintiffs' alleged ownership and, as such, constitutes affirmative evidence. The weight to be accorded an inconsistent statement or quasi admission, however, depends upon the circumstances under which it was made, its purpose, and also upon whether its form and content were controlled or materially influenced by a party with an adverse interest. See, Litman v. Peper, 214 Minn. 127, 7 N. W. (2d) 334. It should be noted that Mr. Schultz, who was defendant's agent, explained that he felt it was necessary to make this statement because the registration of title had not been transferred at the State Capitol from Oskey Brothers to plaintiffs. One of the plaintiffs, Mr. W. L. Hanson, who signed the proof of loss letter, confirmed this explanation and also the fact that the agent had been told that, although the title registration card had not been transferred, the trailer was in fact owned by plaintiffs. A proof of loss is not so binding on the insured that he may not explain or contradict statements made therein. Beckett v. N. W. Masonic Aid Assn. 67 Minn. 298, 69 N. W. 923; Gristock v. Royal Ins. Co. 84 Mich. 161, 47 N. W. 549. A party has a right to explain contradictory statements made by him which have been received in evidence.[5] Furthermore, conflicting or inconsistent statements of a witness which have been explained do little, if anything, to impair the credibility of such witness where his testimony is otherwise corroborated by independent evidence. Here, there was much independent corroborative evidence which stood unchallenged, except by argument based on nothing more than speculation and suspicion. Obviously, the weight of evidence is not affected in the slightest degree by mere speculation or conjecture.

[4]Contradictory or inconsistent statements which are nothing more than quasi admissions should not be confused with true or judicial admissions. See, 4 Wigmore, Evidence (3 ed.) §§ 1058, 1059; 20 Am. Jur., Evidence, § 557.

[5]Henslin v. Wingen, 203 Minn. 166, 280 N. W. 281, and cases therein cited; Jaspers v. Lano, 17 Minn. 273 (296); Yale v. Edgerton, 14 Minn. 144 (194); 6 Dunnell, Dig. & Supp. § 10351; 2 Dunnell, Dig. & Supp. § 3429; 3 Wigmore, Evidence (3 ed.) § 1044; 4 Id. §§ 1058, 1059; and 7 Id. § 1972.

The evidence herein, *taken as a whole,* so overwhelmingly preponderates in favor of plaintiffs as to remove any doubt as to their ownership of the trailer. Under the circumstances, the trial court's order must be affirmed.

Affirmed.

