KATHRYN PETRON, BY ROBERT PHILLIP PETRON, GUARDIAN AD LITEM, v. ROY WALDO.

139 N. W. (2d) 484.

December 31, 1965—No. 39,576.

*Olson & Kief, Herbert E. Olson,* and *William Kalar,* for appellant.
*Powell & Dessert* and *Romaine R. Powell,* for respondent.

FRANK T. GALLAGHER, C.

This is an appeal from an order of the district court denying plaintiff's motion for a new trial.

The suit arose out of a school-bus accident that occurred on the afternoon of April 23, 1962, on Minnesota Highway No. 72 near Kelliher, Minnesota. Kathryn Petron, a 12-year-old girl, was a passenger in the bus. This action was brought by her guardian ad litem against Roy Waldo, the bus driver.

The facts are largely undisputed. It appears that at the time of the accident Highway No. 72 was under construction. Sometime before April 23, 1962, a wooden barricade bearing a sign marked "ROAD CLOSED" had been placed on Highway No. 72 near its intersection with a street in downtown Kelliher. The sign faced traffic entering the construction area from the north. At times this barricade stood at the side of the road, but on April 23 it was in the middle of the road. It appears that despite the presence of the barricade there had been travel on Highway No. 72. There were tire tracks on each side of the barricade and there were cars parked on the new grade south of the barricade.

April 23 was the first day of school following a 2-week spring vacation. Defendant testified that he had driven his bus on the new grade prior to vacation, at which time the barricade had been at the side of the road, but had not driven on it during vacation. On April 23, he drove his loaded bus to the entrance of the new grade, drove around the barricade, and proceeded down the new grade at a speed of about 30 miles per hour. He drove in the middle of the road because the shoulders were soft from the spring thaw and there was no oncoming traffic.

As the bus continued down the new grade, one of the children on the bus told defendant, "There is a rough spot by Samuelson's driveway." The bus was then about 500 feet away from that point. Defendant reduced his speed and shifted into third gear and a "low range." The bus was traveling at about 12 to 15 miles per hour when it hit a pair of hard-packed ridges that cut directly across the new grade. According to defendant's uncontradicted testimony these ridges were not visible from the bus. The bus bounced and Kathryn Petron was thrown from her seat, suffering the injuries complained of here.

At the close of all of the evidence, counsel for plaintiff moved for a directed verdict in her favor on the issue of liability upon the ground that the evidence established defendant's negligence as a matter of law. This motion was denied. The case was submitted to the jury and it returned a verdict for defendant.

The legal issues raised are whether the court erred (1) in failing to instruct that going around a "ROAD CLOSED" barricade erected by the department of highways at a construction site is a violation of Minn. St. 160.27, subd. 5(13),[1] and therefore negligence per se; (2) in denying plaintiff's motion for a directed verdict on the ground that after defendant drove around the barricade his driving within the construction zone was negligence as a matter of law; and (3) in failing to grant a new trial on the ground that the verdict was not justified by the evidence.

■ Under Minn. St. 160.27, subd. 5(13), it is unlawful to "[d]rive over, through, or around any barricade, fence, or obstruction erected for the purpose of preventing traffic from passing over a portion of a highway closed to public travel * * * ." The trial court denied plaintiff's request that the jury be instructed that driving around a barricade is unlawful and negligence as a matter of law and instead instructed:

"There is evidence here that the defendant, Waldo, went around a barricade, the highway was barricaded, and he went around or through, whatever you may call it, a barricade. Where a person has entered a construction zone, that is, going around a barricade into a construction zone, he is required to proceed with caution and must exercise a constant lookout for the dangers ahead. He must exercise care commensurate with the dangers attendant upon the new construction or the repair."

Where the standard of conduct of a reasonable man is established by a

---

[1] Minn. St. 160.27, subd. 5(13), reads: "Except for the actions of the road authorities, their agents, employees, contractors, and utilities in carrying out their duties imposed by law or contract, and except as herein provided, it shall be unlawful to:

\* \* \* \* \*

"(13) Drive over, through, or around any barricade, fence, or obstruction erected for the purpose of preventing traffic from passing over a portion of a highway closed to public travel or to remove, deface, or damage any such barricade, fence, or obstruction."

statute or ordinance, the violation of such enactment is considered negligence in itself if (a) the plaintiff is one of a class of persons whom the statute was intended to protect, and (b) the harm which has occurred is of the type which it was intended to prevent. Prosser, Torts (2 ed.) § 34; Restatement, Torts, § 286. However, reference to this court's decision in Hanson v. Bailey, 249 Minn. 495, 83 N. W. (2d) 252, makes it apparent that the trial court's instruction here was sufficient. In that case the defendant had driven his car around a barricade, entered a construction zone, and, while traveling in that zone, collided with a windrow of tarvia. The trial court directed a verdict against defendant on the issues of negligence and proximate cause. This court affirmed on the basis of the conduct of defendant *after* he had entered the construction zone but specifically ruled that the act of driving around the barricade, while a violation of the statute, was not negligence as a matter of law. The court said (249 Minn. 502, 83 N. W. [2d] 258):

"In passing around the barricade to enter the construction zone, defendant driver Bailey and his passengers violated M. S. A. 161.03, subd. 7. Although this section provides that the driver or owner of a car going around a state-erected barricade is guilty of a misdemeanor, *the statutory language is indicative of the purpose of protecting the work done at the site rather than of providing a safety measure for the protection of travelers.* In view of this construction, it follows that a violation of the statute is not prima facie evidence of contributory negligence. Furthermore, there is nothing in the record to justify a determination that the act of entering the construction zone of itself constituted negligence as a matter of law." (Italics supplied.)

See, Restatement, Torts, § 288.

It is interesting to note that in the recent case of Dornack v. Barton Const. Co. Inc. 272 Minn. 307, 137 N. W. (2d) 536, involving a collision with an object in a construction zone which defendant driver entered by passing around a barricade, this court did not indicate that the act of driving around a barricade might be negligence per se.

The provision construed in the Hanson case, Minn. St. 1957, § 161.03, subd. 7, was repealed by L. 1959, c. 500, art. VI, § 13, and replaced by Minn. St. 160.27, subd. 5(13). Plaintiff contends that the construction of

the present provision should be different from that given to its predecessor because a change in the legislative attitude toward the provision can be inferred from the legislative transfer of the misdemeanor provision from a chapter headed "Department of Highways" (Minn. St. 1957, c. 161) to a chapter headed "Roads, General Provisions" (Minn. St. c. 160). This latter chapter, argues plaintiff, is obviously intended for the benefit and protection of the users of the highways, whereas the former chapter was intended primarily for the benefit and protection of the highway department. In support of this argument, plaintiff points specifically to another misdemeanor provision contained in Minn. St. 160.27, subd. 5, that relating to the obstruction of a highway, § 160.27, subd. 5(1). In Flaherty v. G. N. Ry. Co. 218 Minn. 488, 16 N. W. (2d) 553, this court construed the predecessor of this provision (Minn. St. 1941, § 160.34, subd. 1) as having been intended for the benefit and protection of users of the highway with the result that a violation of that provision was negligence per se.

After reviewing the language and structure of the relevant statutory provisions we conclude that the simple shift in location in a statute does not require nor authorize this court to abandon the construction announced and applied in Hanson v. Bailey, *supra*. The transfer of the misdemeanor provision here involved to another chapter in the statutes has no significance in determining the legislature's attitude toward the provision. An examination of the chapter where the provision is now located reveals that it is as much concerned with the interests of the highway department in relation to highway construction, repair, and maintenance as was the chapter where the provision was previously located. Also, it appears obvious that the provision was placed within this new chapter for the purpose of combining into one subsection all related misdemeanor provisions that had previously been scattered throughout various sections.

These conclusions are supported by comments contained in the report of a legislative interim commission created in 1957 to study the highway laws and to recommend revision that would coordinate various inconsistent provisions which had been hastily adopted in order to implement a recent constitutional amendment establishing a new method of tax distribution and to take advantage of increased Federal participation in highway construction and maintenance. It was on the basis of this commission's report

that the shift of the provision here involved was made. The report makes it clear that the transfer of this provision was for the sole purpose of simplifying the highway laws by collecting into a single section all related misdemeanors. See, Report of the Minnesota Legislative Interim Commission on Highway Laws 1958, pp. 21 and 35. If the legislature had intended to change the rule of Hanson v. Bailey, *supra,* it certainly would have done so in a more obvious and straightforward manner.

■   The question whether defendant's acts after going around the barricade and while driving on the new grade amounted to negligence as a matter of law is presented by the trial court's denial of plaintiff's motion for a directed verdict on the issue of negligence.

In considering a motion for a directed verdict, the trial court is governed by Rule 50.01, Rules of Civil Procedure. The last sentence of that rule provides:

"\* \* \* If the evidence is sufficient to sustain a verdict for the opponent, the motion shall not be granted."

This rule makes the test for a directed verdict the same as that which is applied to set aside an adverse verdict, the function of the rule being to avoid the necessity of submitting a particular issue to the jury where the evidence supports only one result.

Here, the trial court was called upon to decide whether the facts when viewed most favorably to the defendant, the prevailing party, could support a verdict for him. It is clear that issues of negligence are generally reserved for the jury where the facts are in dispute. In this case, the facts were largely undisputed. Nearly all of the evidence on the issue of negligence came from the testimony of the defendant himself. Yet, the right of a party in a negligence action to have a jury pass upon the question of liability is not limited to cases where the evidence is conflicting. The issue of negligence remains the exclusive property of the jury where different minds, applying legal criteria of due care to the conduct of the parties, might reasonably arrive at different conclusions, or might reasonably disagree as to the inferences to be drawn from the undisputed facts. Bimberg v. N. P. Ry. Co. 217 Minn. 187, 14 N. W. (2d) 410; Nees v. Minneapolis St. Ry. Co. 218 Minn. 532, 16 N. W. (2d) 758.

The facts show that defendant disregarded a "ROAD CLOSED" barricade

and drove on the new grade. Since this act was not negligence per se, it is significant here only in the sense that reasonable care may require more of one driving on a road that has been closed for construction than would be required of one driving on a road open to traffic. In the Hanson case, this court said (249 Minn. 502, 83 N. W. [2d] 258):

"* * * An automobile driver who knowingly ignores conspicuous 'Road Closed' and 'Detour' signs posted at the entrance to a portion of a highway which, under authority of law (§ 161.03, subd. 7) has been barricaded and withdrawn from public use for construction purposes enters and drives through the construction zone as a trespasser, and while so trespassing he must, in the exercise of ordinary care for his own safety, anticipate at all times that the normal progress of the construction work may quickly convert an earlier condition of safety into one of danger, and therefore, ordinary care commensurate with the dangers attendant upon construction work requires that he proceed with caution and exercise a constant lookout for excavations, obstructions, and activities incident to the progress of the work."

See, also, Dornack v. Barton Const. Co. Inc. *supra.*

The facts also show that the defendant was warned about the irregularity in the road when the bus was 500 feet from the scene of the accident. This fact would require additional caution and alertness of him.

The problem with plaintiff's position, however, is that the facts also show that the defendant responded to the barricade and the warning with an extra measure of care. Before the warning, the defendant had been traveling at a speed of 25 to 35 miles per hour in the center of the unoccupied road. After the warning, he decreased his speed to from 12 to 15 miles per hour, shifted into third gear and low range, and, according to his testimony, sharpened his lookout. While this response was not in fact adequate to avoid the danger, the question of whether or not it was an exercise of reasonable care under all of the circumstances was, in our opinion, a question as to which different minds could reasonably reach different conclusions and was therefore a jury issue. This is especially true in light of defendant's uncontradicted testimony that the hard-packed ridges were not visible from the bus at the time of the accident.

The cases of Hanson v. Bailey, *supra,* and Dornack v. Barton Const.

Co. Inc. *supra,* do not require a ruling that there was negligence as a matter of law. In each of those cases this court found negligence as a matter of law on the part of a driver passing through a construction zone. However, neither case is comparable factually to this one. In the Hanson case the defendant driver proceeded through the construction zone at about 45 miles per hour with poor visibility caused by a dark and rainy night and the lights of an approaching car. In the Dornack case the defendant driver was traveling through the construction zone at 50 miles per hour, 10 miles in excess of the maximum posted speed limit. In contrast, defendant in this case was proceeding at a moderate speed and with caution.

Thus the trial court properly denied plaintiff's motion for a directed verdict and properly submitted the issue of negligence to the jury.

■ Plaintiff further argues that since the defendant's negligence was established as a matter of law, the trial court's denial of the motion for a new trial must have been based upon the conclusion that the negligence was not the direct cause of plaintiff's injury or that there was no injury. This, plaintiff argues, was an abuse of the trial court's discretion since there was no evidence in the record that would warrant either conclusion.

The premise for this argument fails because negligence on the part of the defendant has not been shown as a matter of law. Since there is sufficient evidence to support a jury finding that defendant was not negligent, the presumption of correctness which attaches to the verdict precludes any speculation as to whether the jury might in fact have based its verdict on some conclusion that is not supported by the evidence. 1 Dunnell, Dig. (3 ed.) §§ 371, 415. The trial court did not abuse its discretion in failing to grant a new trial on the ground that the verdict was not justified by the evidence and was contrary to law.

Affirmed.